# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

KARIM SALEHPOOR,

       Plaintiff,

v.                                                 Civil No. 00-1791 WJ/LFG - ACE

MOHSEN SHAHINPOOR,
Individually and in his Official
Capacity; KEYKHOSROW
FIROOZBAKHSH, Individually and
in his Official Capacity; DAVID E.
THOMPSON, Individually and in his
Official Capacity; RANDY G.
BOEGLIN, Individually and in his
Official Capacity; REGENTS OF THE
UNIVERSITY OF NEW MEXICO
and ENVIRONMENTAL ROBOTS
INCORPORATED, A New Mexico
Corporation,

       Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon a Motion to Dismiss for Failure to State a Claim and on the Basis of Qualified Immunity, filed by Defendants Firoozbakhsh, Thompson and Boeglin on December 5, 2001 **(Doc. 46)**. Having considered the parties' briefs and the applicable law, I find that Defendants' motion is well-taken and will be granted.

During the time relevant to the complaint, Plaintiff was a candidate for a doctoral degree in Mechanical Engineering at the University of New Mexico ("UNM") Mechanical Engineering Department. His graduate research, which concerned the mechanism of actuation for electrically controllable artificial muscles, was funded through federal grant money, specifically by the Jet

Propulsion Lab ("JPL") at the National Aeronautics and Space Administration ("NASA"), and by Sandia National Laboratory.[1] Prior to the defense of his Ph.D. dissertation, Plaintiff alleges that he discovered and reported to UNM authorities that Shahinpoor, who was his academic advisor, illegally converted Plaintiff's research material for the benefit of his own corporation, Environmental Robotics, Inc. Plaintiff also claimed that Defendant Shahinpoor gave this information to a visiting professor at the Orthopedic Department at UNM Hospital, who in turn transferred it to a graduate student in Tehran, Iran, for use in that student's thesis.[2]

Plaintiff alleges that following the submission of these grievances to the Dean of the School of Engineering, Shahinpoor set out on a course of offensive and prejudicial conduct towards Plaintiff concerning the defense and completion of his dissertation. Plaintiff contends that he was ultimately constructively discharged from the Ph.D. program and barred from the UNM campus without due process. He seeks compensatory and punitive damages as well injunctive relief for the various counts in the complaint: deprivation of property interests without due process; conspiracy to deprive him of his constitutional rights under 42 U.S.C. § 1985; failure to adequately train and supervise; whistleblowing retaliation; unjust enrichment; prima facie tort; conversion and defamation. Defendants Firoozbakhsh, Thompson and Boeglin move to dismiss Plaintiff's federal claims.

---

[1] The research was apparently of some critical importance for Mars missions planned by NASA. Plaintiff points to this fact as the reason why the JPL supported Plaintiff's application for Permanent Resident status in the United States, based on the National Interest Waiver.

[2] Shahinpoor allegedly took Plaintiff's actuation mechanism and in effect "traded" it to a graduate student named Shavandi in exchange for using the mathematical section of Shavandi's thesis in ERI's report to a national funding agency.

*Legal Standards*

Although the instant motion was styled as a motion to dismiss, in light of the parties' references to exhibits which were supplied by Plaintiff and the Court's inclusion of these materials in the analysis, the motion will be converted into one for summary judgment. *See Lucero v. Gunter*, 52 F.3d 874, 877 (10th Cir. 1995) (citation omitted) (motion to dismiss is treated as a motion for summary judgment when premised on materials outside the pleadings, and the opposing party is afforded the same notice and opportunity to respond as provided in Rule 56").

In determining claims of qualified immunity, the Court first determines whether the defendant's actions violated a constitutional or statutory right, and second, whether the right was so clearly established that a reasonable person would have known that his conduct violated that right. *Albright v. Rodriguez*, 51 F.3d 1531, 1534-45 (10th Cir.1995). In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. *Harris v. Robinson*, 273 F.3d 927, 931 (10th Cir. 2001) (citation omitted). Once the plaintiff meets this twofold burden, the public official then assumes the usual summary judgment movant's burden of showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 779 (10th Cir. 1993) (cited in *Howard v. Dickerson*, 34 F.3d 978 (10th Cir. 1994); Fed.R.Civ.P. 56(c).[3]

---

[3] I also note that the grounds for dismissal argued by Defendants is alternatively based on failure to state a claim, which bypasses the need to analyze the claim on a qualified immunity defense. *See Sanchez v. Sanchez et al.*, 777 F.Supp. 906, 916 (D.N.M. 1991) (one who has done no wrong has no need for any kind of immunity).

3

*Deprivation of Property Interests Without Due Process*

Plaintiff's complaint is devoid of specifics regarding what due process rights were violated by Defendants' actions. At any rate, his claims fail under theories of both substantive and procedural due process. Defendants correctly note that Plaintiff has no property right as to his other areas of concern, such as right to a temporary advisor, an office, or being free from having to do a second dissertation defense. Further, it was not clearly established at the time of the underlying incidents that Plaintiff had a substantive property interest in continuing his doctoral studies. *See Archuleta v. Colo. Dept. of Institutions*, 936 F.2d 483, 489 n.6, 490 (10th Cir. 1991) (majority assuming without deciding that student had substantive property interest in enrollment) (citing *Regents of Univ.of Michigan v. Ewing*, 474 U.S. 214 (1985). On the facts presented, Defendants did not act arbitrarily in responding either to Plaintiff's grievances regarding Shahinpoor's alleged misuse of Plaintiff research or in his conduct which eventually led to his expulsion. *See Id*. (finding that school had not acted arbitrarily where property right was not a fundamental right, even assuming student had a property interest in enrollment); *Gossett v. Okla.*, 245 F.3d 1172, 1181 (10th Cir. 2001)(plaintiff asserting a substantive due process claim based on an academic decision must show that the decision was the product of arbitrary state action rather than a conscientious, careful and deliberate exercise of professional judgment).

It was, however, clearly established at the time of the alleged incidents, that Plaintiff had a right to pursue his doctoral studies such that he was entitled to procedural due process prior to being barred from the program. *Gossett v. Okla.*, 245 F.3d 1172 (10th Cir. 2001) (property interest in placement in nursing program established) (citing *Harris v. Blake*, 798 F.2d 419, 422 (10th Cir.1986); *Goss v. Lopez*, 419 U.S. 565 (1975) (recognizing a property interest in public

education).  Plaintiff disputes Defendants' contention that the expulsion was purely academic.  A hearing is not required where a student is dismissed for academic reasons.  The student must have prior notice of faculty dissatisfaction with his performance and of the possibility of dismissal, and the decision to dismiss the student must be "careful and deliberate." *Trotter v. Regents of the Univ. of New Mexico*, 219 F.3d 1179, 1184 (10th Cir. 2000) (relying on *Bd. of Curators of the Univ. of Miss v. Horowitz*, 435 U.S. 78, 90 (1978)).  A review of Plaintiff's exhibits shows that following a breakdown of communication between Plaintiff and Shahinpoor in the spring and summer of 1998, UNM nevertheless allowed him to continue under the guidance of another academic advisor.  *Pltff's Exs. 1 and 2*.

However, even taking on Plaintiff's characterization of the events as disciplinary, I find that he was afforded all the procedure required. Plaintiff's expulsion actually occurred as a result of his conduct over the span of several months which UNM authorities viewed as "erratic, threatening and bizarre." *Ex. 8 at 3*.  This behavior included Plaintiff shouting and becoming "extremely agitated," particularly when referring to his allegations against Defendant Shahinpoor, interfering with visitors to the department. *Ex. 4, ¶ 1, Ex. 5*.  Defendant Thompson, who was the Chairman of the Mechanical Engineering Department, stated that Plaintiff's behavior had "degenerated" over several months, *Ex. 8 at 1*, to where it was considered to be "well beyond acceptable behavior " and "potentially violent." *Ex. 8 at 2-3*.  Plaintiff was notified that as a result of his inability to control his "actions and emotions," he would be prevented from continuing any activities on the UNM campus.  He was also given, in writing, an opportunity to request an informal hearing. *Exs. 10 & 11*.  I find that Defendants afforded Plaintiff all the due process to which he was entitled. *See Cleveland Bd. of Educ v. Loudermill*, 470 U.S. 532, 541 (1985) (an

5

individual be given an opportunity for a hearing before he is deprived of any significant property interest); *Hammock v. Keyes et al*, 93 F.Supp. 2d 1222, 1227 (S.D. Ala.) (student facing longer suspensions or expulsion is due a higher standard of due process than one facing temporary suspension) (relying on *Goss*, 419 U.S. at 584).[4]  Accordingly, Defendants are entitled to summary judgment on Plaintiff's due process claims.

***Conspiracy Under 42 U.S.C. § 1985***

Plaintiff's count of conspiracy is devoid of any specifics.  The complaint alleges conspiracy based on Defendants' supporting and "collaborating" with Shahinpoor in an effort to expel Plaintiff from the graduate program and from his office, and denying him a temporary advisor while his grievance against Shahinpoor was under consideration.  A conspiracy requires a combination of two or more persons acting in concert.  *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1126 (10th Cir. 1994).  In order to adequately plead a conspiracy, a plaintiff must allege, "either by direct or circumstantial evidence, a meeting of the minds or agreement among the defendants" which deprives the plaintiff of equal protection or equal privileges and immunities. *Id.* (quoting *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1231 (10th Cir. 1990)); *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (citation omitted).

Unfortunately, the evidence Plaintiff offers in the form of exhibits strengthens Defendants' position on the conspiracy claim, leaving the allegations in the complaint as conclusory statements.  For example, Defendant Thompson allegedly "collaborated" with Defendant Shahinpoor in barring Plaintiff from his office and denying him a temporary advisor.  However,

---

[4] Plaintiff does not allege any constitutional defects within the hearing provided; in fact, there is no indication that he availed himself of the opportunity to schedule a hearing.

the evidence shows that Thompson did in fact allow Plaintiff to continue for some time with another advisor. *Exs. 1, 2*, and that actions were taken to bar Plaintiff from his office as a result of the University's decision to terminate him from the program based on his conduct over the prior several months. *Exs. 9, 10*. Plaintiff attempts to create a conspiracy claim with certain facts recited within his affidavit. *Affidavit, ¶ 9*. However, these facts concern Plaintiff's dissatisfaction with the way his grievance was handled, which are not cognizable as a constitutional claim. *See Trotter*, 219 F.3d at 1184; *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 92, n.8 (1978) (suggesting that a university's failure to follow its own academic rules does not, in itself, give rise to a constitutional violation). Nor do the facts support a claim under § 1985.[5] The most severe shortcoming in Plaintiff's conspiracy claim is that there is nothing in the complaint which can be inferred to be evidence of class-based or racially discriminatory motive.[6] Therefore, this claim should be dismissed.

### *Failure to Adequately Train and Supervise*

Plaintiff attempts to hold the UNM Regents, and Defendants Thompson and Boeglin liable on a failure to train and supervise Defendants' Shahinpoor and Firoozbakhsh. However, without a viable underlying constitutional claim, Plaintiff cannot prevail on this claim. See <u>Apodaca v. Rio Arriba County Sheriff's Dept.</u>, 905 F.2d 1445, 1447 (10th Cir. 1990) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)) (a municipality may not be held liable where there is no

---

[5] Plaintiff states his dissatisfaction with different parts of the grievance procedure, then simply states "In agreement with each other. . . ." Such a statement does not in itself create a cause of action under § 1985.

[6] Plaintiff's response curtly announces that Plaintiff "clearly alleges that he was targeted in large part because of his Iranian heritage." <u>Resp. at 20</u>. Aside from the fact that Count II does not appear to allege this, Plaintiff's exhibits do not alleviate the bareness of the allegations.

underlying constitutional violation by any of its officers).

*Whistleblowing Retaliation (First Amendment)*

I construe Plaintiff's First Amendment claim, raised for the first time as such in his response, as Count IV ("whistleblowing retaliation"). This claims fails on the threshold question of whether Plaintiff was engaged in speech that should be afforded constitutional protection. To prevail on a claim that he was discharged in retaliation for exercising his constitutionally-protected right to freedom of speech, a plaintiff must prove that (1) the speech is protected under the First Amendment and (2) the speech was a substantial or motivating factor in the Defendant's decision to terminate plaintiff's employment. *Conaway v. Smith*, 853 F.2d 789, 795 (10th Cir.1988) (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Speech is protected under the First Amendment only when (1) the speech relates to matters of public concern, *Connick v. Myers*, 461 U.S. 138, 146 (1983); and (2) the interests of the public employee in commenting on matters of public concern outweigh the interest of the government employer "in promoting the efficiency of the public services it performs through its employees," *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968).[7] Speech which discloses any evidence of corruption, impropriety or other malfeasance on the part of city officials in terms of content clearly concerns matter of public import. *Conaway,* 853 F.2d at 793. This law was clearly established at the time of the alleged incidents. Plaintiff's claim cannot survive because he has not alleged a viable claim under the First Amendment.

---

[7] If the employee's speech does not touch on a matter of public concern, the court need not engage in the Pickering balancing analysis. *Connick*, 461 U.S. at 146.

Plaintiff seeks protection for speech in connection with the grievances he filed against Defendant Shahinpoor for unauthorized use of his research material. Plaintiff's characterization of his speech in his affidavit as relating to possible national security issues does not necessarily raise the nature of his grievances against Defendant Shahinpoor to a level of public concern which would require a balancing inquiry.[8] The speech under scrutiny here is Plaintiff's grievances concerning Defendant Shahinpoor's theft and misuse of the material, *not* the subject matter of the dissertation thesis itself. *See Workman v. Jordan*, 32 F.3d 475, 483 (10th Cir. 1994), *cert denied*, 514 U.S. 1015 (1995) (testimony that disclosed the sheriff's department's tolerance of a sexist environment, although touched upon a matter of public concern, related to internal personnel disputes). In reacting to the perceived theft of material toward which he felt some proprietary interest, Plaintiff's motives in bringing the grievances were clearly personal and emotional. *Workman v. Jordan*, 32 F.3d 475, 483 (10th Cir. 1994) (subjective motive of the speaker is an important factor in determining whether the speech was calculated to redress personal grievances or to address a broader public purpose). For example, at one point, Plaintiff compares the stolen material to a "baby . . . being stolen by some persons in front of their eyes." *Ex. 15 at 21*. In this case, Plaintiff's speech clearly embraced "personal disputes and grievances with no relevance to the public interests." *Conaway*, 853 F.2d at 796; *see Gardetto v. Mason*, 100 F.3d 803, 812 (10th Cir. 1996). The subject matter and context of the grievances was limited to a dispute which Plaintiff wanted settled between himself and Defendant Shahinpoor. *Curtis v. Oklahoma City Pub. Schools Bd. of Educ.*, 147 F.3d 1200, 1212 (10th Cir.1998) (speech concerning individual

---

[8] Plaintiff states in his affidavit that it is "feasible that " Artificial Muscles could be used as part of the triggering mechanism for many types of weapons." *Affidavit, ¶ 11*.

personnel disputes or internal policies will typically not involve public concern"). Because Plaintiff's speech, upon which he stakes a claim for First Amendment redress, is not entitled to constitutional protection, this claim will be dismissed.

*Conclusion*

Based on the aforegoing reasons, Defendants Firoozbakhsh, Thompson and Boeglin are entitled to dismissal of all of Plaintiff's federal claims: Fourteenth Amendment Due Process; 42 U.S.C. § 1985; Failure to Train and Supervise; and First Amendment ("Whistleblowing Retaliation").

**THEREFORE,**

**IT IS ORDERED** that Defendants Firoozbakhsh, Thompson and Boeglin's Motion to Dismiss for Failure to State a Claim and on the Basis of Qualified Immunity **(Doc. 46),** is hereby GRANTED.

_____
UNITED STATES DISTRICT JUDGE